392 A.2d 281

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, a corporation,

v.

Alfred WILLIAMS, an Individual, Appellant.

Supreme Court of Pennsylvania.

Argued March 7, 1978.

Decided Oct. 5, 1978.

John C. Carlin, Jr., Mercer, Mercer, Carlin & Scully, Pittsburgh, for appellant.

Harry W. Miller, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

OPINION OF THE COURT

O'BRIEN, Justice.

This appeal is before the court on a petition for allowance of appeal from an order of the Superior Court which affirmed an order of the Court of Common Pleas of Allegheny County. The order of the Court of Common Pleas confirmed an arbitration award in favor of State Farm Mutual Automobile Insurance Company (State Farm), appellee. The award denied uninsured motorist insurance coverage to appellant, Alfred Williams.

The facts in this case are undisputed and are as follows. On February 11, 1975, appellant, Alfred Williams, was driving his wife's 1970 Plymouth automobile when he was involved in an accident with a vehicle driven by an uninsured motorist. As a result of that accident appellant suffered unspecified physical injuries and damages. There is no dispute that the owner-operator of the uninsured vehicle was at fault. At the time of the accident appellant's wife, Patricia Williams, was insured by State Farm with the mandated uninsured motor vehicle coverage provisions. Also at that time, appellant was the titled owner of a 1973 Chevrolet truck, which was also insured by State Farm and the policy contained similar uninsured motorist provisions.

Appellant filed a claim against State Farm under both his and his wife's uninsured motorist coverage. State Farm paid appellant the $10,000 limit under his wife's policy, but refused payment under his policy. Appellant requested arbitration to determine if he was entitled to any uninsured motorist coverage pursuant to his contract of insurance. The request for arbitration was granted and an arbitration hearing was held pursuant to conditions and requirements of the Act of April 25, 1927, P.L. 381, No. 248, § 1, 5 P.S. § 161–181 (hereinafter "the act of 1927").

The arbitrator denied coverage for appellant. The basis of the denial of coverage was an exclusionary provision which stated in pertinent part:

"This insurance does not apply . . . (b) to bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, such vehicle is not an owned motor vehicle. . . ."

The arbitrator based his determination upon the Superior Court case of *Nationwide Mut. Ins. Co. v. Ealy*, 221 Pa.Super. 138, 289 A.2d 113 (1972) (allocatur denied).

Appellant filed an exception to the arbitrator's award and the Court of Common Pleas of Allegheny County, pursuant to State Farm's motion, confirmed the arbitration award. Appellant appealed to Superior Court, which affirmed per curiam. He then petitioned this court for allowance of appeal, which was granted. The basis of this appeal is the contention that the Superior Court case of *Ealy, supra*, relied upon by the arbitrator, as well as by the Court of Common Pleas in confirming the award, is at variance with this court's decision in *Harleysville M. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968).

I. *Scope of Review.*

■ The instant case arose from an arbitration award pursuant to the act of 1927, which contains two provisions affecting the scope of review that a court must use in determining appeals from arbitration awards. Section 10 of the act of 1927, 5 P.S. § 170 provides:

"In either of the following cases the court shall make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or any of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause

shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

"Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

Section 11 of the act of 1927, 5 P.S. § 171, provides:

"In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

"The court may modify and correct the award or resubmit the matter to the arbitrators."

Our review indicates that appellant's requested relief is cognizable under Subsection (d) of § 11, 5 P.S. § 171, which reads:

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict."

In *McDevitt v. McDevitt*, 365 Pa. 18, 73 A.2d 394 (1950), this court stated:

". . . But in the present instance it seems to be agreed by both parties that the arbitration under the partnership agreement was to be governed by the Act of April 25, 1927, P.L. 381; that Act provides (section 11(d)) that the court shall modify or correct the award upon the application of any party to the arbitration where the award is against the law and is such that had it been a verdict of the jury the court would have entered a different or other judgment notwithstanding the verdict; therefore, mistakes of law, but *only* mistakes of law, may be rectified on appeal: *Navarro Corporation v. Pittsburgh School District*, 344 Pa. 429, 432, 25 A.2d 808, 810. . ." (Emphasis in original.)

We therefore determine that the issue raised in this appeal is properly cognizable.

II. *Merits.*

Appellant argues that the arbitrator committed an error of law when he upheld the exclusionary clause of appellant's uninsured motorist coverage. We agree and reverse and remand for proceedings consistent with this opinion.

The Pennsylvania uninsured motorists coverage provision provides:

"(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of Article XIV of 'The Vehicle Code,' act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured

motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, Provided, that:

"(1) An owner or operator of (i) any motor vehicle designed for carrying freight or merchandise or, (ii) any motor vehicle operated for the carriage of passengers for hire or compensation, having in either instance been granted a certificate of public convenience or a permit by the Pennsylvania Public Utility Commission or been issued a certificate of public convenience and necessity or a permit by the Interstate Commerce Commission, and

"(2) An owner or operator of any other motor vehicle designed for carrying freight or merchandise or operated for the carriage of passengers for hire whose employes are insured under the provisions of 'The Pennsylvania Workmen's Compensation Act,' act of June 2, 1915 (P.L. 736), as amended, shall have the right to reject such coverage in writing in which event, such coverage need not be provided in or supplemental to a renewal policy where such insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

"(b) For the purpose of this coverage the term 'uninsured motor vehicle' shall be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.

"(c) An insured's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tort-feasor becomes insolvent within six years after such an accident.

"(d) In the event of payment to any person under the coverage required by this section, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, includ-

ing the proceeds recoverable from the assets of the insolvent insurer. Whenever an insurer shall make payment under the coverage required by this section, which payment is occasioned by an insolvency, such insurer's right of recovery or reimbursement shall not include any rights against the insured of said insolvent insurer, but such paying insurer shall have the right to proceed directly against the insolvent insurer or its receiver, and in pursuance of such right such paying insurer shall possess any rights which the insured of the insolvent insurer might have had if the insured of the insolvent insurer had personally made the payment.

"(e) The coverage required by this section does not apply:

"(1) To property damage sustained by the insured.

"(2) To bodily injury sustained by the insured with respect to which the insured or his representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor.

"(3) In any instance where it would inure directly or indirectly to the benefit of any workmen's compensation carrier or to any person qualified as a self-insurer under any workmen's compensation law.

"(f) Nothing herein contained shall be construed to prevent any insurer from affording the coverage required by this section under terms and conditions more favorable to its insured than are provided herein." August 14, 1963, P.L. 909, § 1 as amended, December 19, 1968, P.L. 1254, No. 397, § 1, effective January 1, 1969.

■ The legislature has provided that all motor vehicle liability insurance sold within the Commonwealth for vehicles registered or "principally garaged" in this Commonwealth must contain provisions to compensate the insured for damages incurred by the insured because of the conduct of an owner or operator of an uninsured motor vehicle, if such conduct causes bodily injury, sickness, disease and death. The uninsured motorist provision requires a determi-

nation that the owner or operator of the uninsured motor vehicle is legal cause of the insured's physical injuries. The legislature has permitted two exceptions to the mandatory inclusion of uninsured motor vehicle protection:

1. P.U.C. or Interstate Commerce Commission certified vehicles designed for freight handling or certified as passenger conveyors; and

2. The owner and/or operator of a vehicle that hauls freight or transports passengers and whose employees are covered by the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915 (P.L. 736), as amended, 77 P.S. § 1, et seq.

The owner and/or operator of the above two classes of motor vehicles have the right to reject in writing the uninsured motorist protection.

■ Where there exists a valid contract of insurance which contains uninsured motorist coverage, an insurance carrier is obligated to compensate the insured for damages inflicted upon the insured because of the conduct of the owner and/or operator of an uninsured motor vehicle except for three statutory exclusions. An insurance carrier is not obligated to compensate an insured within the ambit of the uninsured motorist provision for:

1. Property damage.

2. Bodily injury damages when the insured or his representative has without written consent of the insurance carrier settled or prosecuted to judgment any action against any person or persons liable for such injuries.

3. Any damage, the payment of which would be for the direct or indirect benefit of a workmen's compensation carrier or any person who would qualify as a self-insurer under any workmen's compensation law.

The statute concludes by permitting insurance carriers to offer more favorable uninsured motorist protections.

■ The above statute mandates a floor of minimum protection to be afforded to the owner/operator of a motor vehicle within the Commonwealth. The legislature has per-

mitted enhancement of that minimum protection, but we believe the statute does not permit a diminution of that protection below the statutory limits.

The court in *Harleysville*, 429 Pa. at 395–96, 241 A.2d at 115, gave the following interpretative guide to the above statute:

". . . The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

"In *Pattani v. Keystone Ins. Co.*, 426 Pa. 332, 231 A.2d 402 (1967), we quoted with approval the language of *Katz v. American Motorists Ins. Co.*, 244 Cal.2d 886, 53 Cal.Rptr. 669 (1966), that such statutes are 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others.' We there declared for liberal construction of the statute in order to achieve the legislative intent, and we here adhere to that declaration.

"We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss. Such a ruling is not necessary to the decision of this case and we do not make it. We do hold, however, as did the court in *Sellers* [*v. U.S.F. & G. Co.*, Fla., 185 So.2d 689 (1966)] that where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss."

In *Harleysville*, this court interpreted the following "exclusionary" clause:

". . . 'Part IV. Protection against Uninsured Motorists—"Other Insurance". *With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall*

*apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this Coverage exceeds the applicable limit of liability of such other insurance.*

" 'Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall *be deemed not to exceed* the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.' " (Emphasis added.)

The facts of *Harleysville* are as follows. Blumling, the appellant, was injured in an automobile accident with an uninsured motorist while driving a truck owned and insured by his employer, Lockhart Iron & Steel Company. Lockhart's insurer was Travellers Insurance Company and its uninsured motorist coverage was $10,000. Blumling owned an automobile which was insured by Harleysville Mutual Casualty Company. Blumling's coverage also contained a $10,000 uninsured motorist provision. He sustained injuries which resulted in damages in excess of $10,000. After collecting $10,000 from Traveler's, Blumling filed a claim with his insurance company for the excess amount of unreimbursed damage. Harleysville denied coverage and sought a declaratory judgment of nonliability. The basis of Harleysville's denial of coverage was the above-quoted exclusionary clause. This court permitted the injured party to collect on his uninsured motorist coverage up to the amount of actual damages, when those damages exceeded the amount of uninsured motorist coverage of primary insurance of the motor vehicle involved in the accident.

In the instant case, State Farm seeks to limit its liability under appellant's uninsured motorist provision by the following exclusionary clause in its policy:

"This insurance does not apply . . . (b) to bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, such vehicle is not an owned motor vehicle. . . ."

The above exclusion prohibits *all* recovery by the insured under his policy, if the injury was sustained while he occupied another motor vehicle owned by a resident of the house, and if that vehicle was not an insured vehicle under his policy.

In *Ealy, supra,* the Superior Court upheld an exclusionary clause which permitted Nationwide Insurance Company to write non-cumulative, non-pyramiding uninsured motorist coverage for an insured who owns more than one vehicle. *Ealy* was the owner of five motor vehicles, all insured under separate policies. Ealy, the insured, and his wife were injured in an automobile accident with an uninsured motorist. No dispute existed as to the legal responsibility of the uninsured motorist. All the uninsured motorist provisions limits were $10,000 per person, $20,000 per accident. The Ealy injuries were in excess of $20,000.

The rationale of the Superior Court in *Ealy* was:

"The above-quoted act [Uninsured Motorist Act, 40 P.S. 2000] has as its purpose the protection of innocent victims from irresponsible drivers. *Harleysville Mut. Cas. Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968). The primary thrust of the act is to insure that the innocent victims are not left completely uncompensated. *Accordingly, insurance companies are required to provide at least minimal uninsured motorist coverage for their insureds. However, nothing in the act authorizes insureds to cumulate their individual coverages in order to exceed the minimum coverage required by law. Since in the present case the appellees contractually agreed not to cumulate the coverages on their five vehicles, and since they will still be afforded recovery on one of the policies in compliance with the minimum standards set by the state, we find that they cannot recover on the other four policies covering the vehicles not involved in the accident.*" (Emphasis added.)

We believe *Ealy* cannot stand in light of the uninsured motorist statute and this court's decision in *Harleysville*.

As discussed *supra,* we believe the legislative intent, as expressed in the words of the uninsured motorist statute and as interpreted in *Harleysville,* is clear. The insured may recover uninsured motorists benefits:

1. If the injured party paid the premiums of the policy and was the named insured; and

2. If the recovery under the second uninsured motorist coverage was limited to actual damages; and

3. If the recovery is not limited by the statutory exclusions.

The language in *Harleysville* is applicable to the "household" exclusion in this case, as it was to the "excess insurance" exclusion in *Harleysville.*

In the instant case, the record is devoid of any reference to the amount of actual damages, if any, in excess of the $10,000 already recovered by appellant under his wife's policy. Therefore, pursuant to § 11 of the act of 1927, the case is remanded to consider appellant's claim in light of *Harleysville.*

Order of the Superior Court is reversed and the case is remanded for the appointment of a new arbitrator and for proceedings consistent with this opinion.